UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                        )
JOHN DEATON,                            )
                                        )
          Plaintiff,                    )
                                        )
     v.                                 )     C.A. No. 20-15 WES
                                        )
TOWN OF BARRINGTON, JAMES CUNHA,        )
DAVID WYROSTEK, ANTHONY                 )
DECRISTOFORO, TIMOTHY                    )
HARRINGTON, and JOHN LaCROSS            )
                                        )
          Defendants.                   )
_____)

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, District Judge.

     Before the Court is Defendants' Motion for Summary Judgment,
ECF No. 25.  For the reasons that follow, the motion is GRANTED in
part and DENIED in part.  Further, the remaining state law claim
and associated supervisor liability and municipal liability claims
are REMANDED to the Rhode Island Superior Court.

I. Background

     The present case arises from an altercation between
Plaintiff, John Deaton, and his girlfriend's ex-husband, Ronald
Warner, after which Plaintiff was arrested.  See Defs.' Statement
of Undisputed Facts ("DSUF") ¶¶ 1, 4, 14 ECF No. 26; Pl.'s
Statement of Disputed Facts ("PSDF") ¶ 1, 14 ECF No. 30; Am. Compl.
¶ 11, ECF No. 23.  The outcome of this lawsuit, which challenges

the constitutionality of the arrest as well as the ensuing prosecution, largely depends upon whether the arresting officer had probable cause to arrest Plaintiff.  While many of the facts surrounding the altercation and the investigation are hotly disputed, the probable cause determination hinges upon what the arresting officer knew about the altercation <u>at the time of the arrest</u>.  The following facts, viewed in the light most favorable to Plaintiff, are undisputed and establish what the arresting officer knew at the time he arrested Plaintiff.

On the afternoon of September 24, 2017, the Barrington Police Department ("BPD") received a 911 call from Warner, who reported that Plaintiff had "put his hands on [Warner's] throat" and assaulted him[1] outside of Barrington High School after a football game.  DSUF ¶ 4; 911 Call Tr., Ex. 17, ECF No. 28-18; <u>see</u> PSDF ¶ 7.  Two Officers, Defendants Wyrostek and DeCristoforo, were dispatched to the scene.  DSUF ¶ 5; <u>see</u> PSDF ¶ 2.

Officer Wyrostek arrived first and met with Warner, who explained that during an argument his ex-wife's boyfriend had put his hands on Warner's throat.  DSUF ¶¶ 6-7; PSDF ¶ 7.  As Officer Wyrostek was speaking with Warner, Plaintiff drove by, and Warner

---

[1]  Plaintiff admits that "[his] hand may have touched [Warner's] throat . . . or touched his neck area," but testified that this occurred when he was acting in self-defense, trying to push Warner away.  Deaton Dep. 90:6-9, 106:1-3, ECF No. 28-45.

pointed and identified Plaintiff as the person who had assaulted him. DSUF ¶¶ 10-11; PSDF ¶ 11.  Officer Wyrostek conducted a stop of Plaintiff a short distance from school grounds.  DSUF ¶¶ 12-13; see PSDF ¶¶ 11, 14.  Officer Wyrostek asked Plaintiff what happened, and Plaintiff said he did not attack Warner[2] and that there might be an active warrant for Warner's arrest.[3]  Pl.'s Additional Undisputed Facts ("PAUF") ¶ 38, ECF No. 29; Defs.' Resp. PAUF ¶ 38, ECF No. 33.  At some point during the stop, Plaintiff exited his vehicle to speak with Officer Wyrostek, and, shortly thereafter, Officer Wyrostek placed Plaintiff in handcuffs.  See Am. Compl. ¶ 22.  After a few minutes of questioning, Officer Wyrostek informed Plaintiff that he was being arrested for simple

_____

[2] At his deposition, Plaintiff testified that he maintained his innocence when Officer Wyrostek pulled him over.  Deaton Dep. 108:13-15, ECF No. 25-12.  When asked during his deposition whether Plaintiff maintained his innocence, Officer Wyrostek responded: "[Plaintiff] told me not to believe what [Warner] said because he was a loser with a warrant."  Wyrostek Dep. 70:4-10, ECF No. 28-49.  Similarly, while Plaintiff testified that that he told Officer Wyrostek that Warner was the one who assaulted him, Officer Wyrostek did not testify to the same.  Deaton Dep. 108:13-15; see Wyrostek Dep., ECF No. 28-49.  The arrest report notes that Plaintiff claimed he was acting in self-defense.  Arrest Report 3, Ex. 19, ECF No. 28-20.

[3] Plaintiff also asked Officer Wyrostek if he could take his girlfriend and her children, all of whom were also in the car, home and then return to the scene to respond to questioning; Officer Wyrostek denied this request.  Pl.'s Additional Undisp. Facts ("PAUF") ¶¶ 34-35, ECF No. 29; Defs.' Resp. PAUF ¶¶ 34-35, ECF No. 33.

assault and battery and disorderly conduct.[4]  See DSUF ¶ 14; Arrest
Report 4, ECF No. 23-3.

Officer DeCristoforo arrived at the school shortly after
Officer Wyrostek pulled Plaintiff over.  PAUF ¶ 33; Defs.'s Resp.
PAUF ¶ 33.  Upon arrival, he spoke with Warner and Warner's
girlfriend, Ashley Maryyanek,[5] who confirmed Warner's story.
Arrest Report 4; Maryyanek Statement, ECF No. 23-3.  Officer
DeCristoforo also examined Warner for injuries and observed that
his "throat did not appear red, swollen, or show finger marks."
Arrest Report 4.  At some point,[6] Officer DeCristoforo spoke to

---

[4] Plaintiff argues that there is a genuine dispute of material
fact as to when he was arrested because in his deposition Officer
Wyrostek said the arrest occurred when he told Plaintiff he was
being arrested while Plaintiff claims he was arrested the moment
he was handcuffed.  Pl.'s Mem. Supp. Opp'n S.J. ("Pl.'s Opp'n")
16.  First, as Defendants point out, this is a legal question, not
a factual one.  Second, Plaintiff has not clarified the legal
significance of the timing of Plaintiff's arrest.  However, for
the purposes of this decision, the Court assumes without deciding
that Plaintiff was arrested when he was placed in handcuffs.

[5] The parties also refer to Ms. Maryyanek as "Ms. Marryaneu"
at times.  The Court uses the spelling provided on Ms. Maryyanek's
sworn statement.  See Maryyanek Statement, ECF No. 23-3.

[6] The parties dispute when this conversation occurred.
Plaintiff asserts that it occurred much later in the day, after he
had already been released, while Defendants assert that it occurred
before Plaintiff's arrest.  See Pl.'s Statement of Disputed Facts
("PSDF") ¶ 15, ECF No. 30; Defs.' Mem. Supp. Summ. J. ("Defs.'
Mem.") 25, ECF No. 25-1.  This dispute is not material, however,
as the Court concludes that Fisher's statement was not needed to

Seth Fisher, who said that he witnessed Plaintiff "put his right hand on [Warner's] throat" before Fisher broke up the fight. Fisher Statement, Ex. 12, ECF No. 28-13. After Plaintiff had already been placed in handcuffs, Officer DeCristoforo told Officer Wyrostek that he had witness confirmation of Warner's story. See Wryostek Dep., 91:19-92:4, ECF No. 25-13; DeCristoforo Dep., 101:16-19, ECF No. 25-14; Kristiana Warner Statement, ECF No. 23-2. At some point that day, after Plaintiff's arrest, Officer DeCristoforo learned that there was an active arrest warrant for Warner, and Warner was subsequently arrested by the Providence Police Department pursuant to that warrant. Arrest Report 4.

After approximately two hours at the police station, Plaintiff was released on his own recognizance. DSUF ¶ 14; PSDF ¶ 14. Louis Pulner, the prosecutor for the Town of Barrington, prosecuted the charges against Plaintiff. Pulner Dep. 10:15-16, 11:4-11, ECF No. 25-16; 48A Dismissal, Ex. 33, ECF No. 28-34. The case was scheduled for trial but before trial occurred a 48A dismissal was entered and the charges were dismissed.[7]   48A

---

establish probable cause to arrest Plaintiff. See discussion infra Part III. A.

[7] The parties dispute the reason for the 48A dismissal but do not dispute that it was entered. Defendants assert that the prosecutor "was motivated by his desire to protect the family unit from the possible ramifications of a conviction," Defs.' Statement

Dismissal; <u>see</u> DSUF ¶¶ 15-17; PSDF ¶¶ 15-17.

Thereafter, Plaintiff brought the present lawsuit. The case was initially brought in Rhode Island Superior Court and later was removed to this Court.  <u>See</u> Notice of Removal, ECF No. 1.[8] Plaintiff's Amended Complaint alleges unlawful arrest in violation of R.I.G.L. § 12-7-3 (Count I); false imprisonment in violation of R.I.G.L. § 12-7-1 (Count II); malicious prosecution (Count III); invasion of privacy (Count V); assault and battery (Count VI); failure to supervise (Count VII); municipal liability (Count VIII); unreasonable search and seizure in violation of the Fourth Amendment via 42 U.S.C. § 1983 (Count IX); conspiracy to violate Plaintiff's constitutional rights via § 1983 (Counts IV and X);[9]

_____

of Undisp. Facts ("DSUF") ¶ 17, ECF No. 26, and Plaintiff asserts that the case was dismissed "to avoid an embarrassing loss at trial and avoid the Officers committing perjury," PSDF ¶ 15.

[8] Plaintiff filed a Motion to Remand arguing that his Complaint did not raise any federal questions and that, therefore, the Court did not have subject-matter jurisdiction over the case. ECF No. 7. The Court denied the motion to remand, concluding that the Complaint clearly alleged violations of state <u>and</u> federal law, thus invoking federal question jurisdiction over the constitutional violation claims and supplemental jurisdiction over the state-law claims. ECF No. 14.

[9] Count IV is titled "conspiracy to violate plaintiff[']s civil rights under R.I.[G.L.] § 9-31-1." <u>See</u> Compl. ¶¶ 69-74, ECF No. 1-1; Am. Compl. ¶¶ 68-73, ECF No. 23. In the Court's Memorandum and Order denying Plaintiff's Motion to Remand, ECF No. 14, the Court determined that because "[§] 9-31-1 is Rhode Island's waiver of sovereign immunity and does not create its own cause of action . . . . Plaintiff's allegations of a 'conspiracy to violate [his]

and failure to intervene via § 1983 (Count XI).  Defendants have
moved for summary judgment on all counts, arguing that it is
warranted both on the merits and based on qualified immunity.
Defs.' Mem. Supp. Summ. J. ("Defs.' Mem.") 2, 38, ECF No. 25-1.

II. Legal Standard

"The object of summary judgment is to 'pierce the boilerplate
of the pleadings and assay the parties' proof in order to determine
whether trial is actually required.'"  Tobin v. Federal Exp. Corp.,
775 F.3d 448, 450 (1st Cir. 2014) (quoting Wynne v. Tufts Univ.
Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992)).

Summary judgment is warranted when "there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In ruling
on the motion[,] the . . . [C]ourt must view 'the facts in the
light most favorable to the non-moving party, drawing all
reasonable inferences in that party's favor.'"  Bienkowski v. Ne.
Univ., 285 F.3d 138, 140 (1st Cir. 2002) (quoting Barbour v.
Dynamics Rsch. Corp., 63 F.3d 32, 36 (1st Cir. 1995)). "[A]n issue
of fact is genuine if it may reasonably be resolved in favor of
either party. . . .  For the same purpose, material facts are those

---

civil rights' must be based on 42 U.S.C. § 1983."  Thereafter,
Plaintiff added a specific § 1983 conspiracy claim (Count X).  See
Amend. Compl. ¶¶ 103-108.  Given the Court's previous decision,
these counts are considered one and the same.

which possess the capacity to sway the outcome of the litigation under the applicable law." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997) (internal quotation marks and citation omitted).

Finally, if the nonmoving party "fail[s] to come forward with sufficient evidence to generate a trialworthy issue, [that] warrants summary judgment to the moving party." Vineberg V. Bissonnette, 529 F. Supp. 2d 300, 302 (D.R.I. 2007) (internal quotation marks omitted).

III. Discussion

A. Section 1983 (Counts IV, IX, X, and XI)

The Court begins with Plaintiff's § 1983 claims, resolving these claims on the merits and concluding that there was probable cause to arrest Plaintiff.[10]  To successfully establish a claim under § 1983, Plaintiff must show that he was deprived of a right "secured by the Constitution and laws of the United States" by one acting under the color of law. Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 156 (1978) (internal quotations omitted).  Plaintiff alleges that Defendants conspired to violate and did violate his Fourth Amendment rights by arresting him[11] without probable cause

---

[10] In light of this determination, the Court need not address Defendants' argument that they are entitled to qualified immunity.

[11] Although Plaintiff's Complaint also alleges that Defendants lacked probable cause to prosecute him, the parties confine their arguments to the circumstances leading up to Plaintiff's arrest, and the Court follows suit.  Further, the Supreme Court has never

to do so.[12]  Thus, in analyzing Plaintiff's § 1983 claims, the
Court is tasked with answering whether there was probable cause to
arrest Plaintiff for misdemeanor assault or disorderly conduct.
The Court answers in the affirmative.

Assault is "a physical act of a threatening nature or an offer
of corporal injury which puts an individual in reasonable fear of
imminent bodily harm."  Broadley v. State, 939 A.2d 1016, 1021
(R.I. 2008) (quoting Hennessey v. Pyne, 694 A.2d 691, 696 (R.I.
1997)).  Battery is "an act that was intended to cause, and does

_____

decided that probable cause is a constitutional prerequisite to
prosecution.  See Albright v. Oliver, 510 U.S. 266, 274 (1994)
(leaving question open).

[12] Count IV and Count X, which allege a conspiracy to deprive
Plaintiff of his civil and constitutional rights, list violations
of Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights.
See Am. Compl. ¶¶ 71, 106.  However, these claims, like the others,
are entirely based on Plaintiff's allegation that Defendants
lacked probable cause to arrest and thus must be construed to
allege violation of the Fourth Amendment only.  See id. at ¶¶ 69-
70, 104-105.

Thus, all of Plaintiff's § 1983 claims are based on the
allegation that Defendants did not have probable cause to arrest,
and that, therefore, the arresting officer violated his
constitutional rights.  The conclusion that probable cause existed
therefore disposes of all four § 1983 claims.  See Landrigan v.
City of Warwick, 628 F.2d 736, 742 (1st Cir. 1980) (successful §
1983 conspiracy claim requires "an actual deprivation of a right
secured by the Constitution and laws"); Martinez v. Colon, 54 F.3d
980, 990 (1st Cir. 1995) (Where "no underlying constitutional
violation . . . occurred . . . no supervisory liability can be
attributed to [supervisor] under [§] 1983").

cause, an offensive contact with or unconsented touching of or trauma upon the body of another, thereby generally resulting in the consummation of the assault." Id. (quoting Fenwick v. Oberman, 847 A.2d 852, 855 (R.I. 2004)). "A person commits disorderly conduct if he . . . intentionally knowingly, or recklessly . . . engages in fighting or threatening, or in violent or tumultuous behavior." R.I.G.L § 11-45-1(a)(1). There need only be probable cause to believe that Plaintiff committed one of these three misdemeanors for the Court to conclude that Plaintiff's constitutional rights were not violated. See Wilber v. Curtis, 872 F.3d 15, 21 (1st Cir. 2017) (analyzing only one of two criminal charges).

"A warrantless arrest, like the one at issue here, must be based on probable cause." United States v. Fiasconaro, 315 F.3d 28, 34 (1st Cir. 2002). "Probable cause exists when 'the facts and circumstances within [the police officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense." Id. at 34-35 (quoting United States v. Figueroa, 818 F.2d 1020, 1023 (1st Cir. 1987)).

Evaluated objectively, considering the totality of the circumstances, probable cause "requires only a probability that the [accused] committed the crime." Holder v. Town of Sandown, 585 F.3d 500, 504 (1st Cir. 2009). Questions of probable cause

10

"ordinarily [are] amenable to summary judgment" if the material facts are not in dispute.  Acosta v. Ames Dep't Stores, 386 F.3d 5, 9 (1st Cir. 2004); see also Jordan v. Town of Waldoboro, 943 F.3d 532, 541 (1st Cir. 2019) ("[W]hether a given set of facts constitutes probable cause is a legal question."), abrogated on other grounds by Thompson v. Clark, 142 S. Ct. 1332 (2022); Horton v. Portsmouth Police Dep't, 22 A.3d 1115, 1123 (R.I. 2011). Further, "[e]ven where factual disputes exist, as in this case, a § 1983 claim may fail if the plaintiff's version of events establishes probable cause to arrest." Mistretta v. Prokesch, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998).  Finally, "[t]he probable cause standard does not require the officers' conclusion to be ironclad, or even highly probable.  Their conclusion that probable cause exists need only be reasonable."   United States v. Winchenbach, 197 F.3d 548, 555–56 (1st Cir. 1999).

"[P]robable cause determinations predicated on information furnished by a victim are generally considered to be reliable[.]" B.C.R. Transp. Co. v. Fontaine, 727 F.2d 7, 10 (1st Cir. 1984). This is not a per se rule, however.  Id.  In cases where officers rely on a victim's complaint, "the primary inquiry . . . is whether there is any evidence that the officers acted unreasonably when they determined that [the victim]'s accusation was credible, in light of all the circumstances known at the time."  Forest v. Pawtucket Police Dep't, 377 F.3d 52, 57 (1st Cir. 2004) (holding

11

that officer's determination that victim-witness was "fairly intelligent and credible" was reasonable given that victim-witness's report did not indicate that molestation was in clear view and was not obviously criminal and where there was no evidence that victim-witness's ADHD impacted his credibility).

Here, presented with conflicting accounts of the altercation from the victim and alleged perpetrator, a reasonable officer could make a credibility assessment and determine that Warner's account was more credible than Plaintiff's. Although Plaintiff argues that the active warrant against Warner made him inherently uncredible, this argument must fail because the undisputed facts establish that Officer Wyrostek learned of the active arrest warrant <u>after</u> Plaintiff's arrest.

Plaintiff also argues the relationship between himself and Warner meant that Warner could not be a credible witness. Pl.'s Mem. Supp. Opp'n Summ. J. ("Pl.'s Opp'n") 18, ECF No. 28-1. The Court does not disagree that the nature of the victim's relationship with Plaintiff could be cause to suspect the victim's credibility, <u>see</u> <u>Misretta</u>, 5 F. Supp. 2d at 133 ("The most common situation in which [doubts as to a victim's honesty] arise is when there exists a prior relationship between the victim and the accused that gives rise to a motive for a false accusation."), but it does not render a victim-witness <u>per se</u> unreliable. Importantly, Plaintiff has alleged no facts that would have made

it unreasonable for Officer Wyrostek to determine that Warner's account was credible.  <u>See</u> <u>Smith v. City of Boston</u>, C.V. No. 21-10039-IT, 2021 WL 3742478, at * 9 (D. Mass. Aug. 24, 2021). Plaintiff has alleged nothing about Warner's demeanor when reporting the incident or details of his account that would have undermined his credibility.  <u>See</u> <u>id.</u>  In fact, the only evidence of Warner's demeanor is that "[h]e was visibly upset" when he spoke to Officer DeCristoforo.  <u>See</u> Arrest Report 4.  It remains that "[u]ncorroborated testimony of a victim or other percipient witness, standing alone, ordinarily can support a finding of probable cause."  <u>Charron v. Cnty. Of N.Y.</u>, 49 F.4th 608, 616 (1st Cir. 2022) (quoting <u>Karamanoglu v. Town of Yarmouth</u>, 15 F.4th 82, 87-88 (1st Cir. 2021)).  On this record, Officer Wyrostek's credibility assessment was not unreasonable.

Plaintiff also contends that Officer Wyrostek had a duty to investigate the situation further before making the arrest.  Pl.'s Opp'n 21.  He argues that because "Defendant Wyrostek was faced with conflicting stories, existence of a prior relationship between the alleged victim and the accused of a domestic nature, no injuries and information that the alleged victim may have a warrant [against him]," he should have "investigate[d] further before arresting anyone."  <u>Id.</u>  In making this argument, however, Plaintiff ignores that the inquiry focuses on what Officer Wyrostek knew <u>at the time of the arrest</u>.  At that point, Officer Wyrostek

knew only the following: Warner, the alleged victim, was Plaintiff's girlfriend's ex-husband; Warner stated that the perpetrator had assaulted him and put his hands to his throat; and Plaintiff accused Warner of attacking him. As Plaintiff himself points out, Officer DeCristoforo was the officer who observed a lack of injuries. Pl.'s Opp'n 6; Arrest Report 4. Further, Officer Wyrostek only knew that Plaintiff accused Warner of having a warrant out against him, not that such a warrant actually existed. Officer Wyrostek was not required to credit Plaintiff's characterization of the events or blindly believe his accusations against Warner. See Cox v. Hainey, 391 F.3d 25, 32 n.2 (1st Cir. 2004) ("A reasonable police officer is not required to credit a suspect's story."); see also Charron, 49 F.4th at 616 ("But even where a witness account is disputed, police officers do not have an unflagging duty to complete a full investigation before making a probable cause determination." (internal quotation marks omitted)).

Plaintiff also claims that Officer Wyrostek should have investigated his claims of innocence. While this may be true as a matter of best practice in a case like this, an officer is not required to conduct further investigation once probable cause has been established, "even though witnesses who could have been consulted were readily available." Forest, 377 F.3d at 57; see Baker v. McCollan, 443 U.S. 137, 145-46 (1979) ("[W]e do not think

14

a sheriff . . . is required by the Constitution to investigate
independently every claim of innocence . . . . The ultimate
determination of such claims of innocence is placed in the hands
of the judge and the jury.").

Even if the Court agreed that Officer Wyrostek had a duty to
investigate further before arresting Plaintiff, it is unclear what
the officer would have found that would have vitiated probable
cause. The available witnesses presented several different
versions of the story, but none remove Plaintiff from the
altercation or diminish probable cause. See Lamoureux Statement,
Ex. 1, ECF No. 28-2 (stating that she observed the two men "yelling
at each other" but did not see Plaintiff "put his hands on [Warner]
at any time"); Frances Munafo Statement, Ex. 2, ECF No. 28-3
(stating that she observed the two men arguing but did not see
Plaintiff touch Warner); Jacob Munafo Statement, Ex. 3, ECF No.
28-4 (stating that he observed the altercation but did not see
Plaintiff touch Warner, and noting that his view was obstructed);
Fisher Statement (stating that he witnessed the altercation and
saw Plaintiff "put his right hand on the other man's throat");
Kristiana Warner Statement (stating that she heard Plaintiff,
Warner, and Warner's girlfriend "exchanging words" but did not see
the fight itself); Maryyanek Statement (stating that "[Plaintiff]
followed [her and Warner] and started yelling . . . [with]
intimidating and demeaning statements . . . . and got physical and

put his hand on [Warner's] throat . . . then quickly raised his left fist to hit him in the face"). Further, although the discovery of the active warrant for Warner's arrest could have given rise to concern about Warner's credibility, given that two witnesses confirmed Warner's version of events, that concern does not remove probable cause. See Fisher Statement; Maryyanek Statement. Finally, a lack of apparent injuries does not in and of itself require the conclusion that no crime occurred. Thus, even if further investigation were required, probable cause still existed.

Finally, to the extent Plaintiff argues that Defendants' alleged failure to follow Rhode Island General Laws § 12-7-3, which requires a warrant for misdemeanor arrests with some exceptions, discussed infra at Part III.C., removes probable cause, that argument must also fail as a state misdemeanor warrant requirement does not affect the probable cause analysis. Although the Supreme Court has never expressly held that an officer may perform a warrantless arrest of a misdemeanant when the officer has not witnessed the misdemeanor, see Atwater v. City of Lago Vista, 532 U.S. 318, 340 n. 11 (2001) ("We need not, and thus do not, speculate whether the Fourth Amendment entails an 'in the presence' requirement for purposes of misdemeanor arrests")); Welsh v. Wisconsin, 466 U.S. 740, 756 (1984) (White, J., dissenting) ("[T]he requirement that a misdemeanor must have occurred in the officer's

16

presence to justify a warrantless arrest is not grounded in the
Fourth Amendment . . . and we have never held that a warrant is
constitutionally required to arrest for nonfelony offenses
occurring out of the officer's presence." (citations omitted)),
the First Circuit has upheld such arrests as constitutional, see
Vargas-Badillo v. Diaz-Torres, 114 F.3d 3, 6 (1st Cir. 1997)
("neither the Supreme Court nor this circuit ever has held that
the Fourth Amendment prohibits warrantless arrests for
misdemeanors not committed in the presence of arresting
officers"); Budnick v. Barnstable Cty. Bar Advocates, Inc., 989
F.2d 484 at *(1st Cir. 1993) (per curiam) (unpublished slip op.)
(concluding that an officer need not be in the presence of a
suspected misdemeanant at the time of the offense to perform a
warrantless arrest of the suspect).

The Court thus concludes that there was probable cause to
arrest Plaintiff[13] and, therefore, Plaintiff's § 1983 claims fail

---

[13] In addition, because of the Court's probable cause
determination, Plaintiff cannot sustain his claims for malicious
prosecution and false imprisonment. See Beaudoin v. Levesque, 697
A.2d 1065, 1067 (R.I. 1997) (lack of "[p]robable cause in our law
is a necessary element in false arrest, false imprisonment, and
malicious prosecution claims"). To the extent Plaintiff's false
imprisonment claim is based on R.I.G.L. § 12-7-1 rather than Rhode
Island common law, Plaintiff has indicated that he agrees with
Defendants that an adverse ruling on the probable cause issue
warrants summary judgment in favor of Defendants. See Pl.'s Opp'n
16. Thus, summary judgment is GRANTED on Counts II and III.

as a matter of law.   Thus, summary judgment is GRANTED on Counts
IV, IX, X, and XI.[14]

     B. Invasion of Privacy (Count V)

     Plaintiff  claims  that  Defendants  invaded  his  privacy  in
violation of Rhode Island law when they (1) physically intruded on
his privacy by arresting him and (2) released information of his

_____

     Further,  Plaintiff  does  not  challenge  Defendants'  position
that the existence of probable cause vitiates his assault and
battery claim (rather, Plaintiff argues that there was no probable
cause  and  that  the  facts  relevant  to  probable  cause  are  in
dispute).   See id. at 32.   Thus, summary judgment is also GRANTED
on Count VI.

     Accordingly,  Plaintiff's municipal liability count, insofar
as it is relevant to these claims, must also fail.   See Acosta v.
Ames Dep't Stores, 386 F.3d 5, 12 (1st Cir. 2004) ("Given probable
cause,  there  was  no  constitutional  violation — and  without  the
deprivation  of  a  constitutional  right,  those  claims  cannot
proceed."); see also Part III.C., infra (addressing municipal
liability relevant to Plaintiff's state-law false arrest claim).
Similarly,  Plaintiff  premises  part  of  his  failure  to  supervise
claim  on  the  alleged  constitutional  violation  (in  addition  to
failure  to  supervise  with  respect  to  the  alleged  violation  of
R.I.G.L. § 12-7-3) and, therefore, the Court's determination that
probable cause to arrest existed warrants summary judgment on this
claim,  to  the  extent  it  relates  to  the  alleged  constitutional
violation, as well.   See Am. Compl. ¶¶ 482-86.   Thus, summary
judgment is GRANTED on Counts VII and VIII in so far as they relate
to Counts II, III, and VI.

     [14] Defendants  have  also  moved  to  strike  the  expert  report
Plaintiff submitted in support of his argument that probable cause
did not exist.   Defs.' Reply 10, ECF No. 32.   Given the Court's
determination on the probable cause issue, this motion is DENIED
as MOOT.

arrest to the public.  <u>See</u> Am. Compl. ¶¶ 47, 74-77.

The right to privacy is statutory.  <u>Pontbriand v. Sundlun</u>, 699 A.2d 856, 871 n.12 (R.I. 1997) ("[W]e recognize that in this jurisdiction the only right to privacy is statutory in origin."); R.I.G.L. § 9-1-28.1.  Subsections 9-1-28.1(a)(1) and (4) establish "[t]he right to be secure from unreasonable intrusion upon one's physical solitude or seclusion" and "[t]he right to be secure from publicity that reasonably places another in a false light before the public[.]"

The facts presented here establish neither an intrusion upon seclusion nor any publication that placed Plaintiff in a false light.  First, the arrest occurred in public.  "The right-to-privacy statute 'only protects against an invasion of one's physical solitude or seclusion, neither of which is present when one ventures outside his or her house into the public view.'" <u>Silva v. Rhode Island</u>, 527 F. Supp. 3d 168, 178 (D.R.I. 2021) (quoting <u>Swerdlick v. Koch</u>, 721 A.2d 849, 857 n.11 (R.I. 1998)); <u>Wiggins v. Rhode Island</u>, 326 F. Supp. 2d 297, 312 (D.R.I. 2004) (police did not invade plaintiff's physical solitude or seclusion when they allegedly engaged in false arrest where incident occurred in public).

Second, the statute's protection "does not extend to those records deemed public." <u>Doe v. Edward A. Sherman Pub. Co.</u>, 593 A.2d 457, 459 (R.I. 1991).  Rhode Island law provides that "reports

19

reflecting the initial arrest of an adult and the charge or charges brought against an adult shall be public." R.I.G.L. § 38-2-2(4)(D). Plaintiff has presented nothing to suggest that "the publication of his arrest was the publication of a private fact" Tarzia v. State, 44 A.3d 1245, 1259 (R.I. 2012) (internal quotation marks and citation omitted)). Thus, Plaintiff cannot sustain an invasion of privacy claim on either theory, and summary judgment is GRANTED on Count V.

C. Arrest in Violation of R.I.G.L. § 12-7-3 (Count I)[15]

Plaintiff next argues that Defendants arrested him in violation of Rhode Island General Laws § 12-7-3. Section 12-7-3 provides:

> A peace officer may, without a warrant, arrest a person if the officer has reasonable cause to believe that the person is committing or has committed a misdemeanor or a petty misdemeanor, and the officer has reasonable ground to believe that person cannot be arrested later or may cause injury to himself or herself or others or

---

[15] Defendants argue that this count should be read as another § 1983 claim. Defs.' Mem. 10-11. However, Plaintiff's Amended Complaint clearly seeks to raise a claim alleging a violation of the Rhode Island Statute. See Am. Compl. ¶¶ 52-53. Therefore, the Court addresses it as such. To the extent that this count seeks to raise an additional claim under § 1983 for violation of Plaintiff's constitutional or state constitutional rights, the Court's probable cause determination is dispositive. See discussion supra at Part III.A.; see also State v. Berker, 391 A.2d 107, 111 (1978) ("[A]rticle 1, [section] 6 of [the Rhode Island] constitution has the same effect as the fourth amendment of the Federal Constitution.").

loss or damage to property unless immediately arrested. In support of their motion for summary judgment on this claim Defendants argue that (1) the undisputed facts establish that the statute's requirements were followed and (2) they are entitled to qualified immunity.[16]  Both arguments fail.

First, Defendants assert that it was reasonable for Officer Wyrostek to conclude that Plaintiff would cause injury to others if not arrested immediately because Plaintiff was in a fight that had to be broken up and was "animated" when discussing the altercation with Officer Wyrostek.[17]  Defs.' Mem. 35.  Defendants also contend that Plaintiff was "a flight risk" because he continued to exit the school premises even after seeing Warner speaking with a police officer.  Id. at 36.

Plaintiff, for his part, contends that there was no reasonable basis to believe that he would cause any injury because he was

---

[16] Defendants also argue that the law is not a civil rights statute.  However, they have failed to explain the relevance of the statute's classification and have further failed to provide any support for the assertion.  Thus, the Court does not consider this argument.

[17] Defendants also rely on the "fact" that Plaintiff threatened to "kick [Warner's] ass" but would not do so in front of the kids, arguing that such a threat "could present reasonable basis to support concern that [Plaintiff] would return" and "injure Mr. Warner at a later time."  Defs.' Mem. 35.  However, even if the record were to support a conclusion that such a threat was made, the record does not reveal whether Officer Wyrostek was aware of the threat at the time of arrest.

leaving the premises when he was pulled over and his conduct indicated no intent to injure. Pl.'s Opp'n 25-26. He further says he was not a flight risk because Officer Wyrostek knew his name, address, and profession and because he had specifically told the officer that he would return for a later interview if permitted to take his family home first. Id. at 24.

The only question posed at this juncture is whether it was reasonable to believe that Plaintiff would cause harm to others or pose a flight risk if he was not arrested before a warrant was obtained. This is a circumstance where reasonableness must be determined by a jury. See DeMarco v. Travelers Ins. Co., 26 A.3d 585, 614-615 (R.I. 2011) (quoting R.E. King v. Avtech Aviation, Inc., 655 F.2d 77, 78 (5th Cir. 1981)) (although material facts are undisputed, a case requiring "the determination of the reasonableness of the acts and conduct of the parties under all the facts and circumstances of the case . . . cannot ordinarily be disposed of by summary judgment") (internal quotation marks omitted); Botelho v. Caster's Inc., 970 A.2d 541, 546-47 (R.I. 2009) (agreeing with the trial justice's assessment that "there were significant factual issues still to be determined by the jury, concerning which issues reasonable persons might reach differing conclusions"); Shaffer v. Regions Fin. Corp., 29 So.3d 872, 882 (Ala. 2009) ("Ordinarily, [t]he question of reasonableness is one of fact to be resolved by the trier of fact.") (internal quotation

marks omitted); Gliottone v. Ethier, 870 A.2d 1022, 1028 (R.I. 2005); Southern Gen. Ins. Co. v. Holt, 416 S.E.2d 274, 276 (Ga. 1992); Liberty Mut. Ins. Co. v. Davis, 412 F.2d 475, 480 (R.I. 1969). Unlike with the probable cause analysis provided above, the present case does not present a situation where the Court can determine reasonableness as a matter of law.

Defendants also argue that they are entitled to qualified immunity on this claim because even though qualified immunity was developed in response to federal constitutional claims, it "applies with equal force to Plaintiff's [Rhode Island] state law claims." Defs.' Mem. 39.

Although this Court has previously extended the doctrine of qualified immunity to Rhode Island state-law claims, see, e.g., Camelo v. Bristol-Warren Reg'l Sch. Dist., C.A. No. 19-660, 2021 WL 949363, at *6 (D.R.I. Mar. 12, 2021), it has not done so with this statute. The question of whether the rights conferred by § 12-7-3 are clearly established has not been addressed and there is a dearth of state case law examining and applying the statute itself. Furthermore, Plaintiff argues that qualified immunity is inapplicable because it does not extend to officials who are "plainly incompetent or those who knowingly violate the law." Pl.'s Opp'n 35 (quoting Farry v. City of Pawtucket, 725 F. Supp. 2d 286, 297 (D.R.I. 2010)). In support of this contention, Plaintiff presents evidence that § 12-7-3's requirements for

23

misdemeanor arrests are addressed in the BPD arrest procedures manual, testimony of Officer DeCristoforo explaining that the statute should be followed and that he thought it was not followed at the time of Plaintiff's arrest,[18] and that Officer Wyrostek, the arresting officer, was unaware of the statute at the time of the arrest.  Id.; see also DeCristoforo Dep. 164:20-166:19, ECF 28-42; Wryostek Dep. 34:18-36:13, ECF No. 28-49; BPD Arrest Procedures Manual 3-4, Ex. 9, ECF No. 28-10.  Given that there are genuine issues of material fact as to whether Officer Wyrostek was plainly incompetent and unresolved issues of law as to whether and how qualified immunity applies to claims made under this statute, the Court concludes that summary judgment is not appropriate on this claim.  As a result, the supervisor liability and municipal liability claims, to the extent they relate to this claim, also survive summary judgment.

Finally, although the Court concludes that Defendants are not entitled to summary judgment on these claims, it nevertheless remands these, the only claims that survive summary judgment, to state court as they present undeveloped questions of Rhode Island law that the state courts are best equipped to adjudicate.

Per 28 U.S.C. § 1367(c)(3), "district courts may decline to

---

[18]   The Court assumes that Plaintiff cites Officer DeCristoforo's opinion as relevant to what a "competent police officer" would do and not as binding opinion of law.

exercise supplemental jurisdiction over a claim . . . [when] the district court has dismissed all claims over which it has original jurisdiction."

> When any and all federal claims have been dismissed prior to trial, "the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity" often will counsel in favor of declining jurisdiction over any remaining state-law claim. Where . . . the only federal claim[s] ha[ve] vanished before trial and the remaining state-law claim raises a knotty and unresolved question of state law, dismissal without prejudice typically will be a prudent option.

Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 20 (1st Cir. 2018) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).

Dismissal, however, is not the only option. Where a case is initiated in state court and subsequently removed to federal court, a court may remand the case to state court when the claims over which it has original jurisdiction have been eliminated. See Desjardins v. Willard, 777 F.3d 43, 46 (1st Cir. 2015) (citing Camelio v. American Fed'n, 137 F.3d 666, 672 (1st Cir. 1998)).

In considering these factors, the Court notes the dearth of case law relevant to § 12-7-3 and its application. This is exactly the type of dispute that is best resolved by state courts. Further, "the interests of judicial economy, convenience, fairness, and comity" counsel in favor of declining jurisdiction over these claims. Carnegie-Mellon Univ., 484 U.S. at 350. Accordingly,

Plaintiff's claim that Defendants violated § 12-7-3 (Count I), and Plaintiff's supervisor liability claim (Count VII) and municipal liability claim (Count VIII), to the extent they pertain to Defendants' alleged violation of § 12-7-3, are REMANDED to the Rhode Island Superior Court.

III. Conclusion

For the above reasons, Defendants' Motion for Summary Judgment, ECF No. 25, is GRANTED as to Counts II, III, IV, V, VI, IX, X, XI and as to Counts VII and VIII in so much as they relate to these claims and DENIED and REMANDED as to Count I and Counts VII and VIII in so much as they relate to Count I.

IT IS SO ORDERED.

William E. Smith

District Judge

Date:  March 29, 2023

26